UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KAMAL ALGAHMIE,

            Plaintiff,                            Case No.
v.                                                Hon.

DEARBORN PUBLIC SCHOOLS,            Lower Court Case No. 25-017946-CD
                                                  (Wayne County)
            Defendant.

_____

Mohammed Abdrabboh (P61989)        Kevin T. Sutton (P65364)
ABDRABBOH LAW                      Adam M. Blaylock (P77716)
Attorney for Plaintiff             MILLER JOHNSON
1806 N. Telegraph Rd.              Attorneys for Defendant
Dearborn, Michigan 48128           500 Woodward Ave., Suite 3600
(313) 277-1000                     Detroit, Michigan 48226
mabdrabboh@hotmail.com             (313) 672-6930
                                   suttonk@millerjohnson.com
                                   blaylocka@millerjohnson.com

_____

**DEFENDANT DEARBORN PUBLIC SCHOOLS'**
**NOTICE OF REMOVAL**

NOW COMES Defendant **DEARBORN PUBLIC SCHOOLS**, by and through its attorneys, MILLER JOHNSON, and hereby gives *Notice of Removal* to respectfully remove this matter pending in the Michigan Circuit Court for the County of Wayne, Case No. 25-017946-CD, to the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1441(a) because Case No. 25-017946-CD alleges federal questions. 28 U.S.C. § 1331. The bases for removal are stated as follows:

## STATEMENT OF GROUNDS FOR REMOVAL

1.    On or about November 12, 2025, Plaintiff commenced this action against Defendant in the Michigan Circuit Court for the County of Wayne, Case No. 25-017946-CD.  Defendant has not been served as of the date of this filing, but obtained a copy of the Complaint on November 13, 2025.  A copy of the complaint, which constitutes all process and pleadings filed by Plaintiff in this action, and of which Defendant has notice, are attached as **Exhibit A**.

2.    This *Notice of Removal* is being timely filed by Defendant within 30 days after receiving notice of the complaint by service or otherwise.  28 U.S.C. § 1446(b).  Counsel for Defendant attempted to contact Plaintiff's counsel to effectuate service via email on December 1, 2025, and December 10, 2025, and via phone on December 4, 2025, without success.

3.    This Court has original jurisdiction over this matter based on federal-question jurisdiction pursuant to 28 U.S.C. § 1331.

4.    Pursuant to 28 U.S.C. § 1441(a), because the Court has original jurisdiction according to 28 U.S.C. § 1331, the matter may be properly removed to the United States District Court for the Eastern District of Michigan, which is the federal district court embracing the place where the state court matter is pending.

2

## PLAINTIFF'S FEDERAL CLAIMS

5.      Plaintiff alleges that he suffered damages as a result of Defendant's alleged violation of the U.S. Constitution under the 14th Amendment's due process rights and 1st Amendment's right against retaliation.  **Exhibit A**, ¶¶68-74.

6.      Plaintiff's federal claims arising under the U.S. Constitution give this Court original jurisdiction pursuant to 28 U.S.C. § 1331.

7.      Plaintiff also alleges that he suffered damages as a result of Defendant's alleged violation of state law claims, including the Elliott-Larsen Civil Rights Act, Michigan Constitution, common law intentional infliction of emotional distress, common law negligent infliction of emotional distress, and common law promissory estoppel.  **Exhibit A**, *¶¶*34-67 and 75-79.

8.      Plaintiff alleges, in summary, that he was retaliated against for his protected First Amendment activity, was not selected as varsity basketball coach at Edsel Ford High School (a high school within Dearborn Public Schools) after an unlawful hiring process, and that he was denied due process.  **Exhibit A**.

9.      The state law claims are intertwined with the federal claims because they all involve the same constellation of alleged behavior.  Thus, because all of Plaintiff's state law claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," this Court has supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(a).  No

reason exists under law, including 28 U.S.C. § 1367(c), precedent, or otherwise which may lead this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

10. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

11. Defendant Dearborn Public Schools is serving written notice of the filing of this *Notice of Removal* on Plaintiff and is contemporaneously filing a copy of this notice with the clerk of the Michigan Circuit Court for the County of Wayne in accordance with 28 U.S.C. § 1446(d).

12. The allegations of this *Notice of Removal* are true and correct, and this matter is within the jurisdiction of the United State District Court for the Eastern District of Michigan.

13. By removing Plaintiff's state court civil action to this Court, Defendant does not admit any allegations in the complaint (**Exhibit A**) and does not forfeit, waive, or abandon any defenses.

4

**WHEREFORE**, Defendant Dearborn Public Schools files this *Notice of Removal* and respectfully removes this civil action to the United States District Court for the Eastern District of Michigan. Plaintiff is notified to proceed no further in state court unless or until the case should be remanded by order of the United States District Court for the Eastern District of Michigan.

Respectfully Submitted,

*/s/ Adam M. Blaylock (P77716)*
MILLER JOHNSON
Attorney for Defendant
500 Woodward Ave., Suite 3600
Detroit, Michigan 48226
(313) 672-6924
Dated: December 11, 2025                    blaylocka@millerjohnson.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KAMAL ALGAHMIE,

          Plaintiff,              Case No.

v.                           Hon.

DEARBORN PUBLIC SCHOOLS,     Lower Court Case No. 25-017946-CD
                                    (Wayne County)

          Defendant.

_____

| | |
|---|---|
| Mohammed Abdrabboh (P61989) | Kevin T. Sutton (P65364) |
| ABDRABBOH LAW | Adam M. Blaylock (P77716) |
| Attorney for Plaintiff | MILLER JOHNSON |
| 1806 N. Telegraph Rd. | Attorneys for Defendant |
| Dearborn, Michigan 48128 | 500 Woodward Ave., Suite 3600 |
| (313) 277-1000 | Detroit, Michigan 48226 |
| mabdrabboh@hotmail.com | (313) 672-6930 |
| | suttonk@millerjohnson.com |
| | blaylocka@millerjohnson.com |

_____

## PROOF OF SERVICE

       The undersigned states that on December 11, 2025, she served the foregoing

**NOTICE OF REMOVAL** via PACER.

                                   Respectfully Submitted,

                                   */s/ Grace A. Bergeron*
                                   MILLER JOHNSON
                                   Legal Administrative Assistant
                                   500 Woodward Ave., Suite 3600
                                   Detroit, Michigan 48226
                                   (313) 774-3249
Dated: December 11, 2025            bergerong@millerjohnson.com

# EXHIBIT A

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

KAMAL ALGAHMIE,

Plaintiff,

Case No.:                                    -CD

Hon.:

v.

DEARBORN PUBLIC SCHOOLS,

Defendant.

_____

ABDRABBOH LAW
Mohammed Abdrabboh (P61989)
Attorneys for Plaintiffs
1806 N. Telegraph
Dearborn, MI 48128
(313) 277-1000
_____/

There is no other pending or resolved
civil action arising out of the
transaction or occurrence alleged
in this Complaint

**COMPLAINT AND JURY DEMAND**

Plaintiff, KAMAL ALGAHMIE (hereinafter "Kamal" or "Plaintiff"), by and through counsel,

alleges as follows against Defendant DEARBORN PUBLIC SCHOOLS ("DPS" or

"Defendant"):

1. Plaintiff is an individual residing in the City of Dearborn, Wayne County, Michigan.

1

2. Defendant DPS is a public school district conducting business in Wayne County, Michigan.

3. This Court has subject-matter jurisdiction over these claims pursuant to Michigan law, including the Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. and Michigan common law.

4. Venue is proper in Wayne County under MCR 2.221 and MCL 600.1621 because the transactions and events giving rise to these claims occurred in Wayne County and Defendant conducts business there.

### General Allegations

5. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

6. DPS serves a student population in which Arab American students comprise a majority, including students with national origins from Lebanon, Iraq, Syria, Egypt, Yemen, and Palestine. Upon information and belief, Yemeni Americans constitute the second-largest Arab subgroup within DPS.

7. Edsel Ford High School ("Edsel") is a DPS high school with a majority of students of Yemeni origin.

8. Plaintiff is a first-generation Yemeni American, an Edsel alumnus (2002–2006), and a long-time assistant varsity basketball coach at Edsel, in total Kamal has coached for the past 15 years, he is widely known and respected within DPS.

9. For years, staff and administrators represented to Plaintiff that he was "next in line" to become head varsity basketball coach at Edsel upon the anticipated retirement of the long-time head coach, Ibrahim Beydoun, who concluded his service in 2023 forced out by DPS.

2

10. Beydoun publicly and privately supported Plaintiff as the successor, Beydoun promised Plaintiff he was next for the job. Beydoun supported Plaintiff unequivocally to be his successor for, the job was promised to Plaintiff and reaffirmed by DPS in front of Plaintiff and Beydoun.

11. In May 2023 after Beydoun was forced out of his role, the varsity head basketball coaching position became available at Edsel. Plaintiff was scheduled to interview and based on his experience, qualifications, and rapport with student-athletes, was regarded by nearly all within DPS, including Athletic Director Michael Groulx (AD Groulx), as the clear frontrunner and the most obvious best fit for the job.

12. At first, AD Groulx also new to his role as athletic director engaged and communicated with Kamal as if Kamal was going to be the next Edsel varsity basketball coach. After several weeks passed (Kamal still believing he would be the varsity coach), AD Groulx approached Plaintiff and told him "Rima wants Ryudzik." Upon information and belief, shortly thereafter, Edsel Principal Rima Hassan unilaterally created a process that has never been used to select a basketball coach within DPS, certainly not one that has ever been used at Edsel.

13. DPS and Edsel leadership deviated from typical hiring procedures used at Edsel and other DPS high schools and implemented a purportedly "special," "fair and transparent" process using three committees (administrative, parent, and student) to select the next Edsel varsity basketball coach.

14. As of date and upon information and belief, no such process has ever been used or since been used to hire a varsity basketball coach or any varsity coach in DPS, no explanation has ever been provided for such a deviation.

3

15. According to DPS's investigative report (the "Investigative Report") released on or about July 26, 2023, the decision to implement this unique process was led by Athletic Director Groulx in collaboration with Principal Rima Hassan.

16. Upon information and belief, Principal Hassan orchestrated the process to ensure Plaintiff would not be selected, among other actions she took, she used the cover of including Groulx to implement her plan.

17. Principal Hassan was either unaware or didn't care that AD Groulx believed then and believes today that Kamal is the most qualified and best fit for the Edsel job.

Principal Hassan despite his qualifications and clear popularity didn't want Kamal, she was determined to hire Keith Ryudzik.

18. Ryudzik was and is a teacher at Edsel, Hassan reached out to him even though he wasn't considering the Edsel basketball job and before he applied, she specifically told Keith Ryudzik, to apply for the job and that she would assure he would get the job.

19. Given the controversy surrounding Edsel varsity coach Beydoun in place at the time, Ryudzik told Principal Hassan he would only apply (accept the job) for the job if Beydoun was terminated or resigned, meaning out of the picture as Ryudzik didn't want to compete with Beydoun for the job. DPS terminated Beydoun and Hassan assured Ryudzik he would get the job, he just needed to apply.

20. Although it has never been done before at DPS or Edsel, Hassan declared and set up a 'committee' and a sham process to make it appear she is 'hands off' on the who would fill the Edsel varsity basketball job. Rima directed the AD from DPS central office to form various 'committees' who would purport to be part of the interview process and selection of the next

4

Edsel varsity basketball coach, this process was set up and directed by Rima to give the illusion and appearance of a transparent process.

21. Hassan set up the 'process' as set forth herein in order to distance herself from a decision she knew was wrong and a decision she also knew would be very unpopular among the Edsel and DPS student body and their families because it was an open secret Kamal was next in line after Beydoun stopped coaching. Kamal was most qualified and the best man for the job.

22. The 'committees' and 'process' set up by Hassan and backed up before and after the hiring of Ryudzik were flawed and intentionally set up by Hassan in a manner to ensure Kamal would not be selected but everyone who had a hand in the premeditated process could have plausible deniability. The process violated any semblance of transparency and/or due process for among other reasons:

A) The student committee, which allegedly carried weight in the decision included students that were being taught by Ryudzik in that current semester and it was during final exam week. In other words, these students were asked to rank who they wanted as their next basketball coach, with one of candidates being their teacher.

B) Principal Hassan sat on the administrative committee despite her later proclaiming 'independence' over the process and she also claimed no influence over the hiring or Ryudzik. It remains unclear if Principal had the final decision in the hiring process or if she relied on the flawed 'process.'

C) The committees and process were not consistent with hiring practices used at other DPS high schools or Edsel for coaching positions and served to mask a predetermined outcome adverse to Plaintiff.

5

D) Many of the Yemeni American teachers, staff or administrators at Edsel who should have been asked to participate in the 'process' based on their deep rooted involvement with the Edsel community were not invited or did not join the so called 'committee' that was used to select Edsel's basketball coach.

23. Within approximately a week of the sham hiring process set forth by DPS and Hassan, DPS announced Ryudzik as head varsity coach.

This decision shocked several members of the DPS community, including but not limited to the overwhelming majority of Edsel basketball team, parents, students and alumni of the Edsel basketball program.

24. As a result of DPS decision to hire Ryudzik in what's perceived as a sham, in June of 2023, several hundred community members, including Arab American and Yemeni American stakeholders, attended a DPS Board of Education public meeting to protest the decision and support Plaintiff Kamal, one after another they voiced their concerns about how such a flagrantly poor decision could be taken by DPS/Hassan.

25. Among other concerns shared by the public and discussed by Dearborn Public School Board members was the lack of representation of Yemeni American varsity coaches anywhere in DPS.

In fact as of this filing, while Yemeni Americans make up the second largest numbers of student, not one Yemeni American varsity coach in any sport exists anywhere within DPS. This was an issue several addressed during the public comments period of open forum.

26. On behalf of DPS at the public hearing, Maysam Ali-Bazzi hid behind 'ongoing investigations' and promises to look into concerns made by the public at large.

6

27. At the above-mentioned DPS Board meeting, DPS officials including Maysam Ali-Bazzi claimed that they had launched an investigation into the hiring process and that an 'Investigative Report' was forthcoming. Upon information and belief, this public statement was made to satisfy what was a very angry and disillusioned public.

28. Of note, statements at DPS Board meeting by DPS leadership regarding the timing, scope, and status of the Investigative Report were inconsistent. Executive Director Maysam Alie-Bazzi publicly stated an investigation was underway while later indicating to Plaintiff by email that she would *start* the investigation weeks *after* the her own public statements. Superintendent Glenn Maleyko also stated publicly and privately that the investigation was nearly complete and found no impropriety, contradicting their own timelines.

29. In hindsight, the so called Investigative Report operated to retroactively validate the sham process rather than to impartially evaluate it.

30. As a result of DPS's actions, Plaintiff was denied the head coach position at Edsel and suffered significant humiliation, embarrassment, emotional distress, and loss of dignity. Plaintiff Kamal due to his love and dedication for the students and the DPS community at large chose to return for a 15th year of coaching the Edsel Ford junior varsity team.

31. During his first season, Kamal was undermined at every instance by Ruydzik, this was done in front of both varsity and junior varsity players.

32. As set forth herein Ruydzik sought his own revenge against Kamal because Ruydzik was upset and has told others he is still upset at the public support shown for Kamal to be the rightful varsity basketball coach at Edsel.

33. It wasn't enough for Ruydzik to become the Edsel varsity coach, he has chosen through his conduct to make the work environment for Kamal so unbearable and to undermine and humiliate him so Kamal will leave the program entirely.

### Count I – National Origin Discrimination in Violation of the Elliott-Larsen Civil Rights  Act (MCL 37.2101 et seq.)

34. Plaintiff realleges the foregoing paragraphs.

35. Defendant is an employer within the meaning of the ELCRA, MCL 37.2201 et seq.

36. Plaintiff is a Yemeni American and protected against discrimination in employment on the basis of race and national origin under ELCRA.

37. Plaintiff was qualified for the head varsity basketball coach position at Edsel and, by any objective measure, was the most qualified of the candidates.

38. Defendant deviated from standard hiring practices, engineered a sham committee process, and selected a less qualified, non-Yemeni, Caucasian candidate.

39. Plaintiff's race and/or national origin was at least a motivating factor that made a difference in Defendant's decision not to hire him. Had Plaintiff been anything but of Yemeni origin he would not have suffered such bias.

40. Defendant's post hoc Investigative Report and public communications were used to conceal or ratify the flawed and discriminatory process.

41. As a direct and proximate result, Plaintiff suffered damages including emotional distress, humiliation, loss of enjoyment of life, and other non-economic losses.

8

42. Plaintiff seeks all remedies available under ELCRA, including compensatory damages, exemplary damages, costs, and reasonable attorney fees.

### Count II – Retaliation (ELCRA and Michigan Constitution, art. I, § 5)

43. Plaintiff realleges the foregoing paragraphs.

44. Plaintiff engaged in protected activity by speaking as a citizen and associating with community members concerning matters of public concern at a public DPS Board of Education meeting in June of 2023.

45. Plaintiff's supporters in the hundreds spoke to the Dearborn Public School Board about the lack of transparency and fairness of the head coach selection process, school governance, and equal opportunity in public schools.

46. Plaintiff's association with supporters who attended the public meeting, and their expressive conduct there, are protected by Michigan's constitutional free speech and association guarantees.

47. Following this protected activity and association, Defendant, by and through its administrators and agents, took adverse actions against Plaintiff, including: finalizing and affirming the sham process and selection adverse to Plaintiff; marginalizing and discrediting Plaintiff through inconsistent and misleading public statements; and otherwise acting to chill and punish Plaintiff's exercise of protected speech and associational rights.

48. Among other actions taken, on October 17, 2023, and after Kamal was suffering a very public humiliation after not getting the job that AD Groulx had assured him earlier in the year he would get, AD Groulx and coach Ruydzik made mandatory a 'coaches' meeting.

9

49. Shortly into the meeting the discussion relating to 'basketball coaching' turned quickly, it was clear that Ruydzik had no intention of discussing anything further related to basketball with Kamal. In fact, the majority of the meeting was nothing more than Ruydzik chastising and bullying Kamal for 'making a big deal' about him (Ruydzik) getting the coaching job, the meeting ("Ambush Meeting") was meant to intimidate Kamal and silence him and by extension his supporters.

50. Ruydzik aggressively belittled Kamal in front of AD Groulx who said and did nothing to intervene during the entire Ambush Meeting. Kamal filed a complaint with DPS, with the Board, with Superintendent Maleko regarding the Ambush Meeting as well as other harassment Kamal suffered at the hands of Ruydzik.

51. Unsurprisingly, the Ambush Meeting and other complaints made about Ruydzik were found to be 'unsubstantiated' by DPS. One reason the Ambush Meeting was unsubstantiated is because AD Groulx who was the only other attendee at the meeting lied and denied Kamal's version of events.

52. There is a causal connection between Plaintiff's protected activity and the adverse actions, as evidenced by the close temporal proximity to the public meeting, knowledge by decision-makers of Plaintiff's protected association and speech, and the pattern of harassment and the undermining of Kamal's character by Ruydzik, DPS refused to intervene asserting the claims were 'unsubstantiated.'

53. To the extent Defendant in good faith could not substantiate Kamal's claims regarding the Ambush Meeting and how he was treated during the 2023-2024 season, DPS had an affirmative duty to take steps to prevent retaliation by Ruydzik towards Kamal.

54. Instead of being at least neutral or open minded towards Kamal's complaints, DPS chose to believe AG Groulx and rather than set forth a mechanism to prevent any future harassing conduct, DPS on October 7, 2024 told Kamal he must attend a mediation with Ruydzik, it wasn't a choice Kamal had, in fact the email by HR said it was 'a directive.'

55. Stated differently, HR would have terminated Kamal if he didn't attend the meeting as directed. They required Kamal to attend a 'mediation' between him and Ruydzik after DPS concluded that Kamal's complaint was unsubstantiated. Kamal correctly told HR that such a meeting would be used by DPS only to cover up for Ruydzik's conduct by documented that they did what they could by hosting a 'mediation.'

56. Defendant's retaliation violated ELCRA's anti-retaliation provisions and infringed rights protected by Mich. Const. art. I, § 5, as applied to public employers.

57. As a direct and proximate result, Plaintiff suffered damages including emotional distress, humiliation, and other compensable harm. Plaintiff seeks damages, injunctive and declaratory relief as appropriate, and reasonable attorney fees and costs available under ELCRA.

### Count III – Intentional Infliction of Emotional Distress (Common Law)

58. Plaintiff realleges the foregoing paragraphs.

59. Defendant's conduct, including engineering a sham hiring process to exclude Plaintiff knowing he was clearly the top candidate, disseminating inconsistent and misleading statements to cover the discriminatory and sham process, and punishing Plaintiff for protected speech and association, was extreme and outrageous.

60. Defendant through their agents acted intentionally or with reckless disregard of the substantial probability of causing Plaintiff severe emotional distress.

61. As a direct and proximate result, Plaintiff suffered severe emotional distress, mental anguish, humiliation, and related harms, for which he seeks compensatory and exemplary damages.

62. Plaintiff seeks all relief available under Michigan law, including but not limited to:

  • Compensatory damages for emotional distress, humiliation, and loss of enjoyment of life;

  • Exemplary damages;

  • Attorney fees and costs as permitted under ELCRA;

  • Pre- and post-judgment interest; and

  • Injunctive and declaratory relief as appropriate, including correction of records and non-retaliation orders and a fair process devoid of a predetermined outcome of who should be selected as the basketball coach for the 2026-2027 season.

### Count IV- Negligent Infliction of Emotional Distress (Common Law)

63. Plaintiff realleges the foregoing paragraphs.

64. Defendant's conduct, including engineering a sham hiring process to exclude Plaintiff knowing he was clearly the top candidate and not reviewing or correcting the process when they had the opportunity and where on notice to do so is at best negligent.

12

Defendant should have performed a more thorough investigation into the harassment and humiliation exacted by Ruydzik against Kamal after Ruydzik was named the Edsel basketball coach.

65. At a minimum, DPS should have taken specific action and/or prevented Ruydzik from harassing Kamal and/or undermining Kamal's ability to coach and teach his junior varsity student athletes.

66. Defendant through their agents acted negligently or with reckless disregard of the substantial probability of causing Plaintiff severe emotional distress.

67. As a direct and proximate result, Plaintiff suffered severe emotional distress, mental anguish, humiliation, and related harms, for which he seeks compensatory and exemplary damages.

### Count V- Violation of Due Process

68. Plaintiff realleges the foregoing paragraphs

69. Kamal after serving as junior varsity coach for more than 14 years, including spending thousands of dollars out of pocket and in uncompensated coaching time, was entitled to a fair hiring process. Kamal was not offered due process when he applied for the Edsel varsity basketball job because as set forth above, the job was already predetermined to Ruydzik and the entire interview process and the so-called special committees set up by Hassan were a total sham.

### Count VI- First Amendment- Retaliation

70. Plaintiff realleges the foregoing paragraphs

71. Plaintiff and dozens of others on behalf of Plaintiff engaged in protected speech relating to their objections to due process as it relates to the intentional bypassing of Plaintiff for the head coaching job at Edsel Ford.

72. Plaintiff speech and association with others who exercised these rights set forth in the preceding paragraph did so at a public hearing in front of the Dearborn Public School Board, as such the speak was not only protected but of the utmost public concern.

73. Plaintiff suffered adverse actions (ambush meeting) as a result of his public speech and association as set forth herein.

74. As a result of his protected speech Plaintiff was required to attend an ahead of time and outcome determined 'mediation' with Coach Ryudzik. He was ordered to do by HR Director Courtney Pletze on October 7, 2024. This despite Dr. Violet Souweidane specifically advising Plaintiff on September 9, 2024 that she didn't believe it was 'the best course of action…at this time.'

### Count VII-Promissory Estoppel

75. Plaintiff realleges the foregoing paragraphs.

76. Multiple staff and administrators assured Plaintiff he would be next line and in fact become the next head basketball coach at Edsel Ford when coach Beydoun's tenure was over.

77. Plaintiff relied on these representations and based on the lack of consistent historical processes in selecting coaches, Plaintiff's reliance on these statements was reasonable.

78. In reliance on these future promises, Plaintiff sacrificed his time, he continued his service (including volunteer basketball coaching of student athletes), and other investments of time and money, and foregone opportunities.

79. The aforementioned promises were very clear and definite promise, Plaintiff reasonably relied on them for years and that enforcement is necessary to avoid injustice

WHEREFORE, Plaintiff prays that this Honorable Court grant Plaintiff monetary damages exceeding $ 25,000 in addition to other relief set forth herein.

Respectfully Submitted,

/s/ Mohammed Abdrabboh
Mohammed Abdrabboh (P61989)
ABDRABBOH LAW
Attorneys for Plaintiff
1806 N. Telegraph
Dearborn, MI  48128
(313) 277-1000

Dated: November 7, 2025

## JURY DEMAND

Plaintiff by and through his counsel hereby demands a trial by jury.

RESPECTFULLY SUBMITTED,

/s/ Mohammed Abdrabboh
Mohammed Abdrabboh (P61989)
ABDRABBOH LAW
Attorneys for Plaintiff
1806 N. Telegraph
Dearborn, MI  48128
(313) 277-1000

Dated: November 7, 2025